## A. B. DICK CO. v. SHALLCROSS CO.

District Court, S. D. New York.

Jan. 7, 1930.

Archibald Cox, of New York City, for plaintiff.

Otto Munk, of New York City, for defendant.

COXE, District Judge.

In Dick Co. v. Simplicator Corp'n (C. C. A.) 34 F.(2d) 935, 937, it was held that the Hill invention was a substantial advance over the prior art, in that it provided a coating "dispensing with the necessity of temporary moistening of the stencil sheet during the stencilysing operation" and made possible a sheet "at all times ready for use by inserting the same in a writing machine and typing thereon." The main invention was described in the opinion as "a base having a type impressible cellulose coating with a tempering agent," and is broadly covered by claim 18 of the patent in suit. This claim reads: "A stencil sheet adapted for conversion into a stencil by the impact of the type and the like thereon, the same comprising an open texture base having a coating including a cellulose ester and a tempering agent."

Ever since 1888, stencil sheets have been made from a base of "Yoshino," which is a delicate lacelike paper having a long fibre and open in texture. Prior to Hill, the coating was first of wax and then a coagulated protein, but both of these substances had serious defects, which the Hill invention was designed to remedy. Hill's coating is nitrocellulose or other cellulose ester with a tempering agent of oil. The nitrocellulose gives strength and binding, but dries out of solution "hard and horny." It is necessary, therefore, to have a tempering agent, and the patent specifies for that purpose "a suitable proportion (fifty per centum will give good results) of a tempering agent such as oil." The oil preferred is "castor oil or a similar oil having the power of forming with the cellulose ester and its solvent a

homogeneous body." The purpose of the tempering agent is to prevent the nitrocellulose ester from drying too hard; and claim 18 is not limited to any particular kind of oil in accomplishing that result.

The defendant's stencil, on its own showing, contains a coating of shellac, nitrocellulose, and upwards of 50 per cent oleic acid or red oil. It is insisted by the defendant that this is not an infringement because (1) the base of the coating material is shellac and not nitrocellulose, as in Hill patent; (2) the nitrocellulose operates as a quick drying agent and not to give strength and binding to the composition; and (3) oleic acid is not a tempering agent equivalent to the castor oil used by the plaintiff.

I am not impressed with this contention. Unquestionably, the defendant's stencil was "a coating including a cellulose ester." That is admitted. And it makes no difference that the percentage of nitrocellulose used by the defendant differs slightly from the preferred percentage of the patent inasmuch as claim 18 is not limited to percentages. Neither is it an answer that nitrocellulose is used by the defendant as a "quick drying agent." The question is not what it is used for, but what it accomplishes. Its essential characteristics were known and fully understood, and, although the solvents in a nitrocellulose solution may have a quick drying effect, the fact remains that nitrocellulose itself has practically nothing to do with drying. Furthermore, this assertion of the defendant, that nitrocellulose is used for quick drying, is contradicted by the statements in the defendant's own patent 1,674,611 of June 19, 1928, where it is stated that the nitrocellulose is used "as a hardener and binder" and that "the solution of nitrated cotton is used as a hardener and binder, so that a much stronger stencil sheet is produced than heretofore." I think it is clear, therefore, that the defendant uses the nitrocellulose or cellulose ester of the patent.

The defendant also uses the tempering agent of the patent, which has a softening effect on the nitrocellulose, and prevents it from drying out of solution "hard and horny." Oleic acid is commonly called red oil. It has the properties of oil, and functions as a softening agent in the defendant's solution. That it does not function in identically the same way as castor oil, which is the preferred agent of the patent, is immaterial as long as it responds to the element of the claim described as "a tempering agent." The presence of shellac in the defendant's

coating does not avoid infringement. The preferred formula of the patent includes a "fatty or tallow-like ingredient," like lard or tallow, to serve as a setting agent, in addition to the nitrocellulose and the tempering agent of the main invention. And the Circuit Court of Appeals has held that "the element of a fatty substance serving as a setting agent is merely a preferred addition," and does not affect the infringement of the principal claims. It is the contention of Dr. Grosvenor, the plaintiff's expert, that the shellac used by the defendant behaves functionally as does lard in the Hill preferred formula, and I am inclined to accept his opinion as correct. But whether the shellac functions in this way or not is unimportant, provided the defendant's stencil has the other ingredients comprising the main invention. And I am convinced that it has those ingredients in its use of nitrocellulose, or other cellulose ester, and oleic acid or red oil.

I can see no reason, therefore, why the plaintiff should not have its injunction, especially as there are no complicated controverted questions of fact to be developed on the trial.

The motion for a preliminary injunction is granted.